# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

     Plaintiff,

     v.

C.R. CALDERON CONSTRUCTION, INC.,
CALDERON I, LLC,
CARLOS L. CALDERON, and
ANA P. CALDERON,

     Defendants.

Civil Action No. TDC-17-0282

## MEMORANDUM OPINION

On January 31, 2017, Plaintiff Travelers Casualty and Surety Company of America ("Travelers") filed this breach of contract action based on the alleged breach of an indemnity agreement by Defendants C.R. Calderon Construction, Inc. ("CRC"), Calderon I, LLC ("Calderon I"), Carlos L. Calderon ("Mr. Calderon"), and Ana P. Calderon ("Ms. Calderon"). Travelers alleges that pursuant to a collateral security provision of that indemnity agreement, Defendants were required, but failed, to post a $228,359.27 security deposit to cover Travelers' potential losses stemming from a judgment issued by the United States District Court for the District of Columbia holding that Defendants and Travelers are jointly and severally liable for unpaid wages. Pending before the Court is Travelers' Motion for a Preliminary Injunction in which Travelers seeks specific performance of the collateral security provision of the indemnity agreement. Having reviewed the Complaint and the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, the Motion is GRANTED.

## FINDINGS OF FACT

The underlying facts are not in dispute. In January 2011, CRC entered into a subcontract to install drywall at the H. Carl Moultrie Courthouse in Washington, D.C. That subcontract was conditioned on CRC providing a payment bond. Travelers provided the required bond (the "Payment Bond"), which covered, as relevant here, payments to "all persons supplying labor." Compl. Ex. 1 at 2, ECF No. 1-1. Travelers, in turn, conditioned the Payment Bond on Defendants' execution of an indemnity agreement (the "Indemnity Agreement" or "Agreement"). The Indemnity Agreement was executed in Maryland by all four Defendants on March 14, 2011.

The Indemnity Agreement extends to "[a]ny and all bonds" executed or procured by Travelers on behalf of any of the indemnitors, and indemnifies Travelers for loss resulting from any bond, with "loss" defined as "[a]ll loss and expense of any kind or nature, including attorney's and other professional fees," such as loss and expense incurred in "defending any action in connection with any Bond." Compl. Ex. 2 ¶ 1 ("Indemnity Agmt."), ECF No. 1-2. The Indemnity Agreement contains a collateral security provision, which states:

> Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss. . . . Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond. . . . Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.

*Id.* ¶ 5. In a separate section entitled, "Notice of Rights," the Indemnity Agreement provides that Travelers is entitled to specific performance of "the terms of this Agreement." *Id.* ¶ 16. Lastly, the Agreement grants Travelers a security interest in Defendants' property, excepting Mr. and

Ms. Calderon's residence. In June 2013, Travelers perfected its security interest in Defendants' property.

In April 2012, 13 construction workers employed by CRC on the courthouse project made a claim against the Payment Bond for unpaid wages. On May 1, 2012, those workers filed suit against CRC, Mr. Calderon, Ms. Calderon, and Travelers, as well as against CRC's subcontractor on the courthouse project, in the United States District Court for the District of Columbia (the "D.C. Litigation"). On December 22, 2016, following a bench trial, the court entered judgment against all defendants, jointly and severally, in the amount of $207,599.34 for unpaid wages, plus attorney's fees in an amount to be later determined by the court. Travelers' liability was premised on its role as surety for CRC's Payment Bond.

On January 12, 2017, pursuant to the Indemnity Agreement, Travelers demanded that Defendants deposit with Travelers by January 17, 2017 collateral security in the amount of $228,359.27, the amount required for Travelers to post a *supersedeas* bond to stay the judgment in the D.C. Litigation pending appeal. In that demand, Travelers also informed Defendants that its own attorney's fees for the D.C. Litigation totaled over $80,000, and that plaintiffs' counsel in the D.C. Litigation would be seeking over $600,000 in attorney's fees and costs. On January 13, 2017, Travelers filed its Notice of Appeal in the D.C. Litigation and posted the required $228,359.27 bond. To date, Travelers has received no collateral security from Defendants.

## DISCUSSION

Travelers filed suit against Defendants in this Court, asserting a breach of the Indemnity Agreement based on (1) Defendants' failure to reimburse Travelers $82,167.79 for its legal fees arising from the D.C. Litigation; and (2) Defendants' failure to satisfy Travelers' demand for $228,359.27 in collateral security. As to the latter claim, Travelers now seeks a preliminary

3

injunction requiring specific performance of Defendants' obligation to post the collateral security. In opposing the Motion, Defendants do not challenge the validity of the Indemnity Agreement. Instead, they assert that the Indemnity Agreement does not cover the posting of a *supersedeas* bond, the collateral security provision does not provide specific performance as a remedy, and their obligations under the Indemnity Agreement can be satisfied by providing Travelers a security interest in Defendants' property.

## I.      Legal Standard

To obtain a preliminary injunction, moving parties must establish that (1) they are likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 290 (4th Cir. 2011). A moving party must satisfy each requirement as articulated. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 347 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). Because a preliminary injunction is "an extraordinary remedy," it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## II.     Likelihood of Success on the Merits

Because Travelers' Motion stems from a state law cause of action, this Court applies the choice-of-law principles of the forum state, Maryland, to determine which state's law to apply in evaluating whether Travelers is likely to succeed on its claim for breach of the Indemnity Agreement. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Branhaven, LLC v. BeefTek, Inc.*, 965 F. Supp. 2d 650, 664 (D. Md. 2013) ("When a claim is based on state law, the choice of law rules are those of the state in which the district court sits."). Because indemnity

agreements and surety bonds are contracts under Maryland law, *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 844 A.2d 460, 468 (Md. 2004), the Court applies Maryland's choice-of-law rules for contract claims.

If a contract contains a choice-of-law provision, Maryland courts will apply the law of the state identified in that provision. *See Kunda v. C.R. Bard, Inc.*, 671 F.3d 464, 469 (4th Cir. 2011). However, if a contract does not contain a choice-of-law provision, Maryland courts follow the principle of *lex loci contractus*, under which the applicable law is that of the jurisdiction where the contract was formed. *See, e.g., Allstate Ins. Co. v. Hart*, 611 A.2d. 100, 101 (Md. 1992). Here, the Indemnity Agreement contains no choice-of-law provision and was executed in Maryland, so the Court applies Maryland law.

For purposes of this Motion, Travelers must demonstrate a likelihood that it can succeed on its claim for breach of the collateral security provision of the Indemnity Agreement, a claim that requires a showing of (1) "the existence of a contractual obligation owed by the defendant to the plaintiff" and (2) "a material breach of that obligation by the defendant." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 994 A.2d 430, 442 (Md. 2010). The Court evaluates whether Travelers has made the requisite showing by construing the language of the Indemnity Agreement. As a written contract, the Indemnity Agreement "must be construed in accordance with … traditional rules of objective contract interpretation." *Atl. Contracting*, 844 A.2d at 468. In interpreting contract language, "the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used." *Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003). "[T]he contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the

language of the writing unless no other course can be sensibly and reasonably followed." *Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 232–33 (Md. 2013) (quoting *Sagner v. Glenangus Farms, Inc.*, 198 A.2d 277, 283 (Md. 1964)) (internal quotation marks omitted).

Applying these principles, the Court finds that Travelers is likely to succeed on the merits of its claim that Defendants breached the terms of the collateral security provision of the Indemnity Agreement. The plain language of that provision states that, "upon demand," Defendants agree to deposit with Travelers a sum that Travelers determines to be sufficient to "discharge any Loss or anticipated Loss." Indemnity Agmt. ¶ 5. "Loss," in turn, is clearly and broadly defined as a loss or expense "of any kind" incurred in connection with "any Bond," including any expense incurred in "defending an action in connection with any Bond." *Id.* ¶ 1. "Bond" is defined as "[a]ny and all bonds . . . which [Travelers] has executed or procured" that were "issued for or on behalf of . . . any one or more of the indemnitors." *Id.*

Giving these terms their ordinary meaning, the Court concludes that the present scenario fits squarely within the range of situations that the Indemnity Agreement, in particular its collateral security provision, was designed to cover. As no one disputes, the Payment Bond obligates Travelers to act as a surety on behalf of CRC, including for CRC's payments to all persons supplying labor on the courthouse project. By virtue of the Payment Bond, Travelers is now jointly and severally liable for the judgment in the D.C. Litigation, leaving both Travelers and Defendants obligated for, at a minimum, $207,599.34 in damages. That expense is a "loss" as defined in the Indemnity Agreement in that it has been incurred as a result of Travelers' "defending any action in connection with any Bond," specifically the Payment Bond. In turn, the Payment Bond is a "Bond" as defined in the Indemnity Agreement because it was "issued for or

on behalf of . . . one or more of the indemnitors," specifically, CRC. Because, under the plain language of the Indemnity Agreement, the judgment in the D.C. Litigation would constitute a Loss on a covered Bond, the equally plain language of the collateral security provision entitles Travelers to demand collateral security from Defendants for that loss or anticipated loss. And because "Loss" is further specifically defined to include any "expense of any kind or nature" incurred in defending an action arising from Travelers' bond obligations, Travelers is also entitled to calculate the necessary collateral security as $228,359.27, the amount Travelers was required to offer as security while it continues to defend in the D.C. Litigation by pursuing an appeal. Thus, when Travelers made its demand that Defendants post $228,359.27 in collateral security, Defendants were required by the terms of the Indemnity Agreement to satisfy that demand. Defendants have not only failed to post the entire $228,359.27, but also failed to post any collateral security whatsoever. Accordingly, there is a strong likelihood that Travelers will succeed in establishing that Defendants materially breached their contractual obligation. *See RRC Northeast*, 994 A.2d at 442.

Defendants' protestations merit little comment. Their assertion that the collateral security provision is not triggered by the issuance of a *supersedeas* bond is unpersuasive. Even if Defendants are correct that a *supersedeas* bond is outside the ambit of the Indemnity Agreement, Travelers nowhere asserts that Defendants' contractual obligations are tied to the issuance of the *supersedeas* bond. Instead, Travelers asserts only that the amount of the *supersedeas* bond adequately reflects the sum it is entitled to as collateral security for its losses as a result of its obligations under the Payment Bond, a bond that, as the very reason the parties entered into the Indemnity Agreement, is certainly covered by that Agreement. Equally unconvincing is Defendants' assertion that their collateral security obligation accrues only when there is an actual

loss and their implied conclusion that Travelers' loss is not yet ripe because the D.C. Litigation judgment is on appeal. Defendants' argument fails because the collateral security provision ties that obligation to a "Loss or anticipated Loss." Indemnity Agmt. ¶ 5. Whether a loss is ripe while a binding and final judgment is on appeal is thus immaterial. Finally, the claim that the collateral security provision does not provide for specific performance is contradicted by the Indemnity Agreement's plain language, which states that Travelers "shall be entitled to specific performance of the terms of this Agreement," without exception. *Id.* ¶ 16. The Agreement therefore presents no barrier to, and in fact contemplates, such relief. Traveler's has thus shown the requisite likelihood of success on the merits.

## III.   Irreparable Harm

The Court turns to the next *Winter* factor, irreparable harm. To establish irreparable harm, plaintiffs must show that they are "likely to be irreparably harmed," not just that they face a mere possibility of harm. *United States v. South Carolina,* 720 F.3d 518, 533 (4th Cir. 2013). The "irreparable harm" to be suffered must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)).

Here, Travelers contends that it will be irreparably harmed by Defendants' breach of the collateral security provision such that specific performance of that provision is necessary. Specific performance is an "extraordinary equitable remedy" to be granted only where money damages would be "unavailable or inadequate." *Archway Motors, Inc. v. Herman*, 378 A.2d 720, 724 (Md. Ct. Spec. App. 1977). Because Travelers seeks to enforce a collateral security agreement, such an extraordinary remedy is appropriate. "Sureties are ordinarily entitled to specific performance of collateral security clauses," because without such specific performance,

8

the surety will lose "the security position for which [it] bargained." *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984). Without specific performance, the collateral security provision of an indemnity agreement would essentially be rendered a nullity, a result that runs contrary to basic precepts of contract construction. *See Dumbarton*, 73 A.3d at 232–33 (emphasizing that contracts must be construed to give effect to all of their elements). Courts thus "routinely recognize that a surety's loss of its right to collateralization cannot be adequately remedied through money damages." *First Nat'l Ins. Co. of Am. v. Sappah Bros., Inc.*, 771 F. Supp. 2d 569, 574 (E.D.N.C. 2011); *see, e.g., Developers Sur. and Indem. Co. v. Bi-Tech Const., Inc.*, 964 F. Supp. 2d 1304, 1310 (S.D. Fla. 2013) (finding that in the absence of a preliminary injunction to enforce a collateral security provision of an indemnity agreement, the plaintiff "would suffer the harm of having its rights under the Indemnity Agreement effectively nullified" and thus that an injunction was warranted); *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const.*, 534 F. Supp. 2d 1290, 1321 (S.D. Fla. 2008) (rejecting the argument that specific performance of a collateral security provision was inappropriate because "a surety's loss of its right to collateralization cannot be adequately remedied through money damages"); *U.S. Fidelity & Guar. Co. v. Feibus*, 15 F. Supp. 2d 579, 588 (M.D. Pa. 1998) (stating that specific performance of a collateral security provision is necessary "'if a creditor is to have the security provision for which he bargained'") (citing *Safeco*, 739 F.2d at 433).

Under the reasoning reflected in the great weight of case law, Travelers has shown a likelihood of irreparable harm. Travelers bargained for collateral security in the event of a loss or anticipated loss for which it would be obligated under the Payment Bond. Based on the judgment in the D.C. Litigation, Travelers is now, in fact, obligated for upwards of $200,000 as a result of that Payment Bond, but does not have the collateral security it was promised under the

Indemnity Agreement. Travelers is therefore presently exposed to the risk of non-payment on the part of Defendants, the very risk that the collateral security provision of the Indemnity Agreement was meant to obviate. Money damages are inadequate here, because they cannot compensate Travelers for unduly bearing this risk of non-payment and the loss of its bargained-for security position as compared to other creditors. *See XL Specialty Ins. Co. v. Truland*, No. 1:14CV1085, 2014 WL 4230388 at *4 (E.D.V.A. 2014) (finding irreparable harm in a collateral security case because the plaintiffs were "not receiving the benefit of th[eir] bargain, as they are currently facing substantial, uncollateralized exposure from over sixty claims against the bonds. Collateral security is meant to protect against this very risk."). In recognition of this reality, Defendants specifically agreed in the collateral security provision that failure to post such security upon demand would cause "irreparable damage" to Travelers such that it "would not have an adequate remedy at law." Indemnity Agmt. ¶ 5. Thus, specific performance is necessary to avoid irreparable harm.

Defendants present no compelling argument to the contrary. Defendants claim that specific performance of the collateral security provision is unnecessary because Travelers has already received a security interest in Defendants' property. Although status as a secured creditor might improve Travelers's future ability to recover some or all of its expenses stemming from the D.C. Litigation, that possible later recovery does not obviate the risk of loss that Travelers is presently bearing and so does not substitute for the collateral security for which Travelers bargained. Travelers has thus established that it is likely to suffer irreparable harm in the absence of Defendants' posting of the collateral security. *See Safeco*, 739 F.2d at 433; *Sappah Bros.,* 771 F. Supp. 2d at 574.

## IV.     Balance of Equities and Public Interest

The balance of equities tips in Travelers' favor. As discussed above, if Defendants are not required to post the collateral security, Travelers will lose the benefit of its bargain on that issue. Defendants have no comparable, cognizable injury because "requiring a party to comply with its contractual obligations does not constitute harm." *Toolchex, Inc. v. Trainor*, 634 F. Supp. 2d 586, 593 (E.D. Va. 2008). Moreover, requiring Defendants to honor their obligations under the Indemnity Agreement is in the public interest. Indeed, in matters relating to contracts, "the usual and most important function of courts of justice is rather to maintain and enforce contracts than to enable parties thereto to escape from their obligations" under them. *Smith Braedon Co. v. Hadid*, 825 F.2d 787, 790–91 (4th Cir. 1987) (quoting *Balt. & Ohio Sw. Ry. Co. v. Voight*, 176 U.S. 498, 505 (1900)). The general interest in enforcing valid contracts has a particularly acute public interest implication here because of the "vital role of sureties in the construction industry" in providing "financial strength and credit" to ensure that a contractor has the "ability to perform its obligations." *Aventura Eng'g*, 534 F. Supp. 2d at 1303. Where the balance of equities and public interest favor an injunction, Travelers has satisfied each of the *Winter* factors. The Court will therefore grant the Motion and enter a preliminary injunction requiring the posting of the collateral security.

## VI.     Bond

Under Federal Rule of Civil Procedure 65, a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Based on the posture of this case and the remedy sought, the Court determines that no bond need be posted. *See Bi-Tech Const.*, 964 F. Supp. 2d at 1310 (noting, in the context

11

of a surety seeking a preliminary injunction requiring specific performance of a collateral security provision, that "it would defeat the purpose of the instant injunction if Plaintiff had to offset the bond to be posted by Defendants," and that the posted security could be returned if Defendants succeeded in the litigation).

## CONCLUSION

For the foregoing reasons, Travelers' Motion for a Preliminary Injunction is GRANTED. Defendants are ordered to deposit immediately with Travelers collateral security in the amount of $228,359.27. A separate Order shall issue.

Date:   May 22, 2017

THEODORE D. CHUANG
United States District Judge